**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CURTIS E. RICHARDSON, | Case No.: 11-CV-1332-LHK |
| Plaintiff, | |
| v. | AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | |
| Defendant. | |

Plaintiff Curtis E. Richardson ("the Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Social Security Administration Commissioner's ("the Defendant's") decision denying his claim for disability benefits.  The Plaintiff seeks an order reversing the decision and awarding benefits, or in the alternative an order remanding for further administrative proceedings.  The parties' have filed cross-motions for summary judgment.  Having considered the parties' papers and the administrative record, the Court GRANTS Plaintiff's motion, DENIES Defendant's motion, and REMANDS for further administrative proceedings for the reasons discussed below.

**I.     BACKGROUND**

The Plaintiff was born on August 18, 1962, and was 43 years old at the alleged disability onset date of February 13, 2006.  Administrative Transcript ("Tr.") 21; Tr. 14.  The Plaintiff has an

1

**United States District Court**
For the Northern District of California

1    Associate's degree and additional on-the-job training.  Tr. 73.  The Plaintiff's prior work

2    experience is as an electrical engineer, most recently as a failure analysis engineer.  Tr. 73-74.

3          The Plaintiff has alcohol abuse disorder, which causes episodes of diabetic ketoacidosis,

4    and the Plaintiff's diabetes has induced neuropathy.  Tr. 17-18.  The Plaintiff has also been in a

5    series of automobile accidents.  The first relevant accident occurred on February 13, 2006.  Tr. 325.

6    The Plaintiff was in a second accident on March 8, 2006.  Tr. 318.  The Plaintiff's third accident

7    occurred June 12, 2007.  Tr. 473.  The Plaintiff received head and musculoskeletal injuries in these

8    accidents.  *See, e.g.,* Tr. 336.  The Plaintiff suffers from seizures, migraine headaches, and other

9    cognitive disorders.  *See, e.g.,* Tr. 557.  The Plaintiff also suffers from a variety of musculoskeletal

10   impairments including chronic right shoulder impingement and pain.  *See, e.g.*, Tr. 800.  On

11   September 22, 2009, Dr. William Louis Cappiello assessed the Plaintiff's shoulder injury as a

12   "potential candidate for subacromial surgical debridement."  *Id.*  Since the February 2006

13   automobile accident, the Plaintiff has attempted to return to work three times but has been unable

14   to maintain consistent employment.  *Id.* 74-75.  The Plaintiff no longer drives, and spends most of

15   his time at home.  *Id.* 80-83.  The Plaintiff takes Dilantin for seizures, Neurontin for pain and

16   migraines, Effexor for depression, Ibuprofen, and uses an insulin pump.  *Id*. 84-85.

17         On March 21, 2008, the Plaintiff filed an application for disability insurance benefits under

18   Title II of the Social Security Act, seeking benefits from February 14, 2006, the first work day after

19   the alleged disability onset.  Tr. 195-200.  The Plaintiff's application was initially denied on August

20   22, 2008.  *Id.* at 145–49.  The Plaintiff sought reconsideration, and his application was denied a

21   second time on November 17, 2008.  *Id.* at 158–63.  On December 13, 2008, the Plaintiff filed a

22   request for hearing by an Administrative Law Judge ("ALJ"), which was granted.  *Id.* at 164, 165-

23   69.  On October 19, 2009, the Plaintiff, represented by counsel, testified at the hearing before

24   Administrative Law Judge Brenton Rogozen ("the ALJ").  *Id.* at 94–116.  On December 15, 2009,

25   the ALJ issued his decision, which found that the Plaintiff was not disabled and denied disability

26   insurance benefits.  Tr. 119-40.  On February 4, 2010, the Plaintiff filed a request for review with

27   the Appeals Council.  Tr. 69.  The Appeals Council remanded to the ALJ on April 15, 2010.  Tr.

28

Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    141-44.  The ALJ held a second hearing on August 10, 2010, during which the Plaintiff and a

2    vocational expert ("VE") testified.  Tr. 70-93.

3           On October 28, 2010, the ALJ issued a decision finding the Plaintiff disabled, but not prior

4    to September 22, 2009.  Tr. 8-36.  On December 17, 2010, the Plaintiff filed a request for review

5    with the Appeals Council.  Tr. 6.  On January 19, 2011, the Appeals Council declined to review the

6    decision.  Tr. 1-5.  On March 31, 2011, the Plaintiff appealed the ALJ's finding that the disability

7    onset date was September 22, 2009.  ECF No. 1.  The Plaintiff filed the instant motion for

8    summary judgment on January 30, 2012.  ECF No. 20 ("Mot.").  The Defendant filed his

9    opposition and cross-motion for summary judgment on April 2, 2012.  ECF No. 24 ("Op.").  The

10   Plaintiff filed his reply on April 11, 2012.  ECF No. 25 ("Reply").

11   **II.     LEGAL STANDARD**

12          **A.     Standard for Reviewing the ALJ Decision**

13          The Court has authority to review the ALJ decision pursuant to 42 U.S.C. § 405(g).  The

14   Court may disturb the ALJ decision only if it is unsupported by substantial evidence in the record

15   as a whole or if it is not an application of the proper legal standard.  *Id.*; *Vertigan v. Halter*, 260

16   F.3d 1044, 1049 (9th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable

17   mind might accept as adequate to support a conclusion," *id*. (citing *Richardson v. Perales*, 402 U.S.

18   389, 401 (1971)), and it "means more than a scintilla but less than a preponderance." *Jamerson v.*

19   *Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation and internal quotation marks omitted).  If the

20   evidence supports more than one rational interpretation, the Court must uphold the ALJ's

21   conclusion.  *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005).

22          **B.     Standard for Determining Disability**

23          The Social Security Act defines disability as the "inability to engage in any substantial

24   gainful activity by reason of any medically determinable physical or mental impairment which can

25   be expected to result in death or which has lasted or can be expected to last for a continuous period

26   of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must also be so severe

27   that a claimant is unable to do his previous work, and cannot "engage in any other kind of

28

*United States District Court*
*For the Northern District of California*

3

Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    substantial gainful work which exists in the national economy," given his age, education, and

2    vocational background.  42 U.S.C. § 423(d)(2)(A).

3         The ALJ evaluates Social Security disability cases using a five step sequential evaluation

4    process.  20 C.F.R. § 404.1520.

5         1. The ALJ must first determine whether the claimant is presently engaged in substantially

6            gainful activity.  20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled; otherwise

7            the evaluation proceeds to step two.

8         2. The ALJ must determine whether the claimant has a severe impairment or combination

9            of impairments.  20 C.F.R. § 404.1520(c).  If not, the claimant is not disabled; otherwise

10           the evaluation proceeds to step three.

11        3. The ALJ must determine whether the claimant's impairment or combination of

12           impairments meets or medically equals the requirements of the Listing of Impairments,

13           20 C.F.R. § 404, subpart P, app. 1.  20 C.F.R. § 404.1520(d).  If so, the claimant is

14           disabled; otherwise the analysis proceeds to step four.

15        4. The ALJ must determine the claimant's residual functional capacity ("RFC") despite

16           limitations from the claimant's impairments.  20 C.F.R. § 404.1520(e).  If, given his

17           RFC, the claimant can still perform work that the individual has done in the past, the

18           claimant is not disabled.  If the claimant cannot perform his past work, the evaluation

19           proceeds to step five.  20 C.F.R. § 404.1520(f).

20        5. At step five, the Commissioner has the burden of demonstrating that the claimant is not

21           disabled.  The Commissioner must show that the claimant can perform some substantial

22           gainful work in the national economy, considering the claimant's age, education, and

23           vocational background.  20 C.F.R. § 404.1520(g)(1).  If not, the claimant is disabled.

24        The claimant has the burden of proof at steps one through four, and the Commissioner has

25   the burden of proof at step five.  *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir.2001).

26        In addition to determining whether the claimant is currently disabled, the ALJ must

27   determine the onset date of any disability.  The burden of proving onset date rests with the

28

4

Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    claimant. *Magallanes v. Bowen*, 881 F. 2d 747, 750 (9th Cir. 1989); *Armstrong v. Comm'r of*

2    *Social Sec. Admin.*, 160 F. 3d 587, 590 (1998).

3    **III.    ANALYSIS**

4           The ALJ found that the Plaintiff became disabled on September 22, 2009, as a result of a

5    worsening shoulder injury.  The Plaintiff argues that he was disabled before September 22, 2009,

6    for two independent reasons.  First, the Plaintiff argues that his shoulder injury occurred before

7    September 22, 2009.  Mot. at 17-21.  Second, the Plaintiff argues that the ALJ's "step five" finding

8    that the Plaintiff could perform work in the national economy is flawed.  Mot. at 22-26.

9           **A.    Substantial evidence in the record indicates that Plaintiff's shoulder injury
                     became more severe on September 22, 2009**

10          The Plaintiff argues that there is not substantial medical evidence in the record supporting

11   an onset date of September 22, 2009.  First, the Plaintiff argues that September 22, 2009 is simply

12   the date a doctor first suggested shoulder surgery, but not the date on which the disabling shoulder

13   injury occurred.  Second, the Plaintiff argues that the ALJ failed to consult a medical expert when

14   the ALJ inferred a disability onset date of September 22, 2009.

15          As a preliminary matter, the Court notes that the ALJ did not infer that the Plaintiff's

16   shoulder was first injured on September 22, 2009.  In fact, the ALJ determined that prior to

17   September 22, 2009, the Plaintiff's shoulder injury was already severe enough to prevent more than

18   occasional overhead reaching.  Tr. 26-28; Tr. 86.  However, the ALJ did not find the Plaintiff's

19   injury disabling until it worsened on September 22, 2009.  Tr. 30.  Thus, the mere fact that the

20   medical record shows that Plaintiff's shoulder was injured before September 22, 2009 does not

21   contradict the ALJ's findings, as suggested by Plaintiff.  The issue is whether substantial evidence

22   in the record supports the ALJ's finding that on September 22, 2009, the Plaintiff's shoulder injury

23   worsened to become disabling.[1]

24          The record shows that the Plaintiff's shoulder condition deteriorated gradually.  Prior to

25   February 4, 2009, the Plaintiff had not complained of shoulder pain.  *See, e.g.,* Tr. 711 (no shoulder

26   _____

27   [1] In the next section, the Court will consider the Plaintiff's second argument: that the Plaintiff's
     shoulder injury was disabling even if the injury merely limited the Plaintiff to only occasional
     overhead reaching.

28
     5
     Case No.: 11-CV-1332-LHK
     AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    complaints on July 3, 2008); Tr. 878 (no shoulder complaints on January 27, 2009).  However, on

2    February 4, 2009, the Plaintiff complained of "chronic . . . right shoulder pain" to Dr. Dharti

3    Ramesh Patel.  Tr. 868.  The Plaintiff reported that: (1) the shoulder pain had existed for years; (2)

4    was "[n]o better or worse than usual"; and (3) that he had become "frustrated w/ lack of control."

5    Tr. 868.  An X-Ray on March 25, 2009 revealed only "a streak of air density in the right anterior

6    musculature . . . [possibly] due to air introduced by injection of the right shoulder."  Tr. 863.  The

7    Plaintiff began physical therapy on April 3, 2009.  *See* Tr. 863; Tr. 852-53.  On April 17, 2009, the

8    Plaintiff told his physical therapist that, "shoulder felt 40% better until moved motor cycle fell on

9    back of hand.  Today back of hand hurts more > shoulder."  Tr. 849.  Physical therapy was

10   unsuccessful, and on June 3, 2009, the Plaintiff was examined by Dr. Alden B. Casanave, who

11   referred the Plaintiff for an MRI.  The June 9, 2009, MRI report observed, "Right shoulder shows a

12   mild increased signal within the right supraspinatus tendon, which may be secondary to chronic

13   tendinitis or a partial tear."  Tr. 818.

14          On August 11, 2009, Dr. Cappiello examined the Plaintiff's right shoulder, and treated the

15   patient with a bursa injection with 8 cc lidocaine 1% and 1 cc depo-40.  Tr. 804-05.  After

16   observing that the Plaintiff responded well to the injection ("definite pain-relieving effect within 5

17   minutes,") Dr. Cappiello instructed the Plaintiff to wait two weeks, and if the pain was still reduced

18   to "restart [his] home exercise regimen as previously instructed."  Tr. 804.  On September 22,

19   2009, the Plaintiff returned to Dr. Cappiello.  Tr. 800.  The Plaintiff reported "about a week of

20   good pain relief" from the bursa injection six weeks prior, but complained, "Cannot lift arm

21   without recurrent severe pain, disturbing sleep."  Tr. 800.  Dr. Cappiello then diagnosed the

22   Plaintiff as a "potential candidate for subacromial surgical debridement because not responding

23   well to conservative treatment," and referred the Plaintiff back to Dr. Casanave "to reconsider

24   surgery option."  *Id.*

25          The Plaintiff argues that the date on which shoulder surgery was first recommended is not

26   the date of disability onset.  *See* Mot. at 20 (citing *Swanson v. Sec'y of Health and Human Servs.*,

27   763 F.2d 1061, 1066 (9th Cir. 1985).  The *Swanson* court recognized that "the critical date is the

28

6

Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    date of onset of disability, not the date of diagnosis")).  However, *Swanson* upheld the ALJ's

2    finding "that the date of onset and diagnosis coincided."  *Id.*, 763 F.2d at 1066.  Although the

3    *Swanson* plaintiff received medical treatment for "various disorders" prior to the disability onset

4    date, the medical record did not show "definitive disabling symptoms until about the time of their

5    diagnosis."  *Id.*  Similarly, although the Plaintiff, Mr. Richardson, suffered from a shoulder injury

6    prior to his diagnosis as a candidate for surgery, there is substantial evidence in the record that the

7    Plaintiff was not disabled until September 22, 2009.  Specifically, it was on September 22, 2009,

8    that the Plaintiff's extensive medical record first indicated that the Plaintiff "*cannot* lift arm

9    without *recurrent severe* pain."  Tr. 800 (emphasis added).

10        The Plaintiff also argues that the ALJ was required to consult a medical expert to determine

11   the disability date.  The Plaintiff cites Social Security Regulation [SSR] 83-20 (1983), which states

12   "[a]t the hearing, the administrative law judge (ALJ) should call on the services of a medical

13   advisor when onset must be inferred."  *Id.*  SSR 83-20 contemplates scenarios in which, "the onset

14   of a disabling impairment(s) occurred some time prior to the date of the first recorded medical

15   examination," or in which, "the alleged onset and the date last worked are far in the past and

16   adequate medical records are not available."  *Id.*  Accordingly, when there is an ambiguity as to the

17   onset date of the disability, the ALJ must assist the claimant in creating a complete record by

18   inferring an onset date.  *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th

19   Cir.1998).  "This assistance may require the ALJ to call a medical expert to testify."  *Aldrich v.*

20   *Barnhart*, 151 Fed.Appx. 561, 563 (9th Cir. 2005) (citing *Armstrong*, 160 F.3d at 590).

21        The record in the instant case is complete and unambiguous.  The medical progression of

22   the Plaintiff's shoulder injury is well documented: Mr. Richardson's medical records date back to

23   the February 13, 2006 automobile accident, and include dozens of medical appointments through

24   September 22, 2009.  *See* Tr. 317-916.  *See also* Tr. 917-1019 (post-September 22, 2009 medical

25   records).  There is substantial evidence in the record to support the ALJ's finding of a September

26   22, 2009 disability onset date, specifically, the emergence of a new symptom, "recurrent severe

27   pain," which coincided with the failure of "conservative treatment."  Tr. 800.  Accordingly, the

28

7

Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*(left margin, vertical text)* **United States District Court** For the Northern District of California

1    ALJ did not need to infer a date of onset because the "medical evidence establish[ed] the precise

2    date [the] impairment became disabling," and thus, the ALJ was not obliged to consult a medical

3    expert.  SSR 83-20.  *See also E.R.H. v. Comm'r of Social Sec. Admin.*, 384 Fed.Appx. 573, 575 (9th

4    Cir. 2010) ("The ALJ reviewed the record and had adequate information to conclude that it was

5    clear that the disability onset date at the earliest was 1998."); *Aldrich v. Barnhart*, 151 Fed.Appx.

6    561, 563 (9th Cir. 2005) ("The ALJ's determination that Aldrich was not disabled prior to June 30,

7    1998 was supported by substantial evidence. The ALJ was not required to call a medical expert to

8    establish an onset date.").

9        In sum, the Court finds substantial evidence in the medical record to support the ALJ's

10   finding that the Plaintiff's shoulder injury worsened on September 22, 2009.  The Court next

11   reviews the ALJ's finding that before the Plaintiff's shoulder worsened on September 22, 2009, the

12   Plaintiff was not disabled.  Specifically, the Court reviews the ALJ's step five finding that the

13   Plaintiff could have performed work in the national economy.  *See* Tr. 26-28.

      **B.**    **The ALJ's step five finding that the Plaintiff could perform work in the national economy is not supported by substantial evidence in the record**

15       The ALJ denied disability benefits prior to September 22, 2009.  The ALJ found that the

16   Plaintiff was not engaged in substantially gainful activity (step one); that the Plaintiff suffered from

17   severe impairments, including seizures, headaches, neck pain, and shoulder pain (step two); and

18   that the Plaintiff's impairments did not meet the requirements of the Listing of Impairments (step

19   three).  The ALJ found that until September 22, 2009, Plaintiff had residual functional capacity

20   (RFP) to perform "light work" involving simple repetitive tasks with limited overhead reaching, no

21   climbing, no exposure to hazards or moving machinery, and allowance for three absences per

22   month due to headaches (step 4).  Tr. 23, 28.  Finally, a vocational expert (VE) testified that based

23   upon the Plaintiff's RFP, the Plaintiff could perform four jobs listed in the Dictionary of

24   Occupational Titles (DOT) that exist in substantial numbers regionally and nationally: Cashier II,

25   Office Helper, Merchandise Marker, and Pari-mutuel Ticket Seller.[2,3]  Tr. 85-92.  The ALJ relied

27   _____

[2] At the August 10, 2010 hearing, the ALJ asked the VE what jobs could be performed by:
    [A] hypothetical individual less than 50 years of age with a high school diploma, prior relevant work same as the claimant who is limited to light work; occasional overhead with

8

Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    upon this VE testimony, and found that "there would be a significant number of jobs in the national

2    economy" that the Plaintiff could perform (step 5).  Tr. 26-28.  Accordingly, the ALJ found that the

3    Plaintiff was not disabled prior to September 22, 2009.  Tr. 30.

4         The Plaintiff argues that the ALJ's step five finding is unsupportable on two grounds: (1)

5    the ALJ failed to address a conflict between the VE's testimony and the DOT; and (2) that the jobs

6    listed by the VE do not exist in substantial numbers.

7              **1.  There is a conflict between VE testimony that certain jobs can be
                   performed with only occasional overhead reaching and the DOT
8                   description that these jobs require frequent reaching**

9         "[Social Security Ruling] 00-4p . . . explicitly requir[es] that the ALJ determine whether the

10   [VE]'s testimony deviates from the [DOT] and whether there is a reasonable explanation for any

11   deviation."  *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).  The VE testified that an

12   individual limited to only "occasional overhead" reaching could perform the jobs of: (1) cashier II;

13   (2) office helper; (3) merchandise marker; and (4) pari-mutuel ticket seller.  Tr. 85-92.  However,

14   the DOT describes each of these jobs as requiring "frequent" reaching.  *See* Mot., Ex. A at 5, 8, 11,

15   and 15 (excerpts from the DOT).  The ALJ did not acknowledge or resolve this conflict.  *See* Tr.

16   26-28.

17        The Defendant argues that the DOT does not distinguish between overhead reaching and

18   other types of reaching.  Op. at 7.  However, the ALJ must investigate such potential

19   inconsistencies.  Otherwise, the Court "cannot determine whether the ALJ properly relied on [the

20   VE] testimony, [and thus] . . . cannot determine whether substantial evidence supports the ALJ's

21   step-five finding that [the Plaintiff] could perform other work."  *Massachi*, 486 F.3d at 1153.

22        Many Courts have held that there is a potential inconsistency between: (1) VE testimony

23   that a job could be performed by someone who can only occasionally reach up; and (2) a DOT job

24   description that requires frequent reaching.  For example, in *Prochaska v. Barnhart*, the VE

25              – only occasional overhead work and limited to unskilled work; simple repetitive tasks . . .
                and who, who has to have a job that would be permitted with someone who has seizure,
26              seizure precautions that it would be no scaffolding or ladders, moving machinery, sharp
                objects; no driving a car or other vehicle.
27   Tr. 85-86.
     [3] Pari-mutuel ticket sellers sell betting slips at race tracks.
28
Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    testified that an individual who could only occasionally reach above shoulder level could perform

2    the job of cashier. *Id.*, 454 F.3d 731, 736 (7th Cir. 2006).  However, a cashier's requirements,

3    under the DOT, include reaching frequently.  *Id.*  *Prochaska* held that "[i]t is not clear . . . whether

4    the DOT's requirements include reaching above shoulder level, and this is exactly the sort of

5    inconsistency the ALJ should have resolved with the expert's help." *Id.*  Similarly, in *Jordan v.*

6    *Astrue*, the VE testified that an individual whose right shoulder only allowed "occasional overhead

7    reaching" could perform the jobs of production assembler, production inspector, and garment

8    folder, all of which require frequent reaching. *Id.*, No. 09-CV-1559-MMA, 2010 WL 2816234, at

9    \*5 (S.D. Cal., May 4, 2010).  The DOT makes no distinction between the right and left hands, or

10   between overhead reaching and other reaching. *Id.*  Accordingly, *Jordan* held that, "the Court has

11   no way to determine whether substantial evidence supports the ALJ's decision." *Id.*

12       As in *Prochaska* and *Jordan*, the ALJ relied upon VE testimony that specific jobs could be

13   performed with only occasional overhead reaching, in conflict with the DOT requirement for

14   frequent reaching. *See* Tr. 26-28; Tr. 86.  The ALJ did not resolve this conflict. *See* Tr. 26-28.

15   Therefore, the Court cannot determine whether substantial evidence supports the ALJ's finding that

16   the Plaintiff was not disabled prior to September 22, 2009.  Accordingly, the Court VACATES the

17   ALJ's finding that the Plaintiff was not disabled prior to September 22, 2010, and REMANDS for

18   the limited purpose of resolving the inconsistencies between the VE testimony and the DOT.[4]

19   **2.   The jobs identified by the ALJ exist in substantial numbers**

20       The Plaintiff argues that the jobs identified by the ALJ do not exist in significant numbers.

21   First, the Plaintiff argues that pari-mutuel ticket seller jobs are seasonal.  Second, the Plaintiff

22

23   _____

24   [4] The Plaintiff requests that the Court "remand the matter for immediate payment," under the
     "crediting as true" doctrine. Mot. at 27.  However, this doctrine requires: "(1) the ALJ has failed to
25   provide legally sufficient reasons for rejecting . . . evidence; (2) there are no outstanding issues that
     must be resolved before a determination of disability can be made; and (3) it is clear from the
26   record that the ALJ would be required to find the claimant disabled were [the rejected] evidence
     credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80
27   F.3d 1273, 1292 (9th Cir. 1996).  The conflict between the VE testimony and the DOT is an
     outstanding "issue that must be resolved." *Harman*, 211 F.3d at 1178; *see also Jordan*, 2010 WL
28   2816234 at \*5.  Accordingly, the Court remands for further administrative proceedings. *See*
     *Jordan*, 2010 WL 2816234 at \*5.

Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    argues that there are only 400 office helper jobs regionally, and only 260 merchandise marker jobs

2    regionally.  The Plaintiff argues that 660 jobs regionally do not constitute "significant numbers."

3         The Plaintiff's arguments are not well taken.  As a preliminary matter, the ALJ did not rely

4    on the availability of pari-mutuel ticket seller jobs.  Tr. 27 ("Even without the ticket seller position,

5    the undersigned finds that the numbers cited by the vocational expert represent significant jobs in

6    the national economy.").  Furthermore, the Plaintiff's argument omits cashier II jobs (1,000

7    available regionally, and 300,000 available nationally).  Tr. 27.  In total, omitting pari-mutuel ticket

8    seller jobs, the VE and the ALJ identified 1,660 regional jobs and 326,000 national jobs.  Tr. 27.

9    These are significant numbers of jobs.  *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)

10   (1,000 to 1,500 regional jobs constitutes a significant number); *Moncada v. Chater*, 60 F.3d 521,

11   524 (9th Cir. 1995) (64,000 nationwide jobs constitutes a significant number); *Barker v. Sec'y of

12   Health and Human Services*, 822 F.2d 1474, 1479 (9th Cir. 1989) (1,266 regional jobs constitutes a

13   significant number). Accordingly, the Court finds that the job titles identified by the ALJ exist in

14   significant numbers in the national economy.

15   **IV.    CONCLUSION**

16        For the aforementioned reasons the Court GRANTS Plaintiff's motion for summary

17   judgment; DENIES Defendant's motion for summary judgment; and VACATES and REMANDS

18   the ALJ's decision that the Plaintiff was not disabled prior to September 22, 2009[5] for the sole

19   purpose of resolving the conflict between the vocational expert testimony that the jobs of Cashier

20   II, Office Helper, Merchandise Marker, and Pari-mutuel Ticket Seller can be performed with only

21   occasional overhead reaching, and the Dictionary of Occupation Titles description that these jobs

22   require frequent reaching.

23   **IT IS SO ORDERED.**

24   Dated: November 26, 2012                          *Lucy H. Koh*

25                                                     LUCY H. KOH

26   [5] The Court's September 26, 2012 Order contained a typographical error in the Conclusion which
     stated that the disability onset date was September 22, 2010, rather than September 22, 2009. *See*
27   ECF No. 26.  This Amended Order corrects the typographical error.  This correction has no bearing
     on the Plaintiff's motion for attorney's fees, which remains set for hearing on January 10, 2013.
28   *See* ECF Nos. 28-31.

                                                   11
     Case No.: 11-CV-1332-LHK
     AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Judge

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

12

Case No.: 11-CV-1332-LHK
AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT